# OFFICE OF THE CLERK OF THE SUPERIOR COURT

As a Clerk of the Superior Court of this County, State of North Carolina, I certify that the attached copies of the documents described below are true and accurate copies of the originals now on file in this office.

*Number And Description Of Attached Documents:*

File 23 CVS 3407

Complaint and Motion for Preliminary Injunction and Affidavit filed 12/21/23 @ 3:48 (26 pages)



**SEAL**

Witness my hand and the seal of the Superior Court

| | |
|---|---|
| *Date* | 01/29/2024 |
| *Clerk Of Superior Court* | James M. Mixson, III |
| *Name Of Undersigned Clerk (type or print)* | Ruth H. Prevette |
| *Signature* | |

☐ *Deputy CSC*   ☒ *Assistant CSC*   ☐ *Clerk Of Superior Court*

AOC-G-101, Rev. 3/19
© 2019 Administrative Office of the Courts

STATE OF NORTH CAROLINA    IN THE GENERAL COURT OF JUSTICE
                                  SUPERIOR COURT DIVISION
COUNTY OF IREDELL                   FILE NO. *23CVS3407*

F I L E D

2023 DEC 21 P 3: 48

IREDELL CO., C.S.C.

BY _____ *IK*

|                                      |     |                                  |
| ------------------------------------ | --- | -------------------------------- |
| GRANT LAWRENCE,                      | )   |                                  |
| CONSTANCE HOLDINGS, LLC,             | )   | **VERIFIED COMPLAINT, AND**      |
|                                      | )   | **MOTION FOR PRELIMINARY**       |
|      Plaintiffs, | )   | **INJUNCTION**                   |
|                                      | )   |                                  |
| v.                                   | )   |                                  |
|                                      | )   |                                  |
| IREDELL COUNTY,                      | )   |                                  |
|     Defendant.        | )   |                                  |
|                                      | )   |                                  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs, complaining of Defendant Iredell County, state as follows:

1.      On October 17, 2023, Iredell County, through its duly elected Board of Commissioners, amended the County's Zoning Regulations to strictly regulate the manner in which certain homeowners may rent property they own.

2.      This change (effective on January 1, 2024) has and will continue to cause many property owners, including Plaintiffs, economic and special injuries, including deprivation of property rights.

3.      Even though the amendment at issue is preempted by state law and unconstitutional, both facially and as applied, the Board of Commissioners passed the "ordinance of the County," claiming that "enforcement is through the zoning tool. It is not a stand-alone ordinance."

4.      Plaintiff, Grant Lawrence ("Lawrence"), is a resident of North Carolina and is a member of Constance Holdings, LLC, a North Carolina Limited Liability Company ("Constance").

5.      Lawrence and Constance have acquired numerous residential properties (collectively "Properties") throughout Iredell County to utilize as short-term rentals ("STRs").

6.      The Properties identified below are managed by a professionally licensed property manager, which is already regulated by the North Carolina Real Estate Commission.

7.      Ever since Lawrence and Constance acquired the Properties identified below, Plaintiffs have continuously used the Properties for short-term rentals ("STRs"), which Iredell County defines as rentals for less than ninety (90) days.

8.      Defendant, Iredell County ("County"), is a body politic organized pursuant to the laws of the State of North Carolina.

9.      The County has adopted and enforces the Iredell County Zoning Ordinance (hereafter the "Zoning Ordinance"), including a zoning district map, which regulates the use of land within the County.

10.     The County has specifically enacted an ordinance in the County to regulate short term rentals ("STR Ordinance").

11.     Defendant claims it is authorized, pursuant to its powers and authority "in Zoning" to restrict STRs despite admitting that it would be prohibited from passing a STR Ordinance as a stand-alone ordinance.

12.     The County admits that its STR Ordinance is unenforceable by law enforcement officers.

13.     The County alleges that the STR Ordinance's "enforcement is through the zoning tool. It is not a stand-alone ordinance."

14.     Further, the County states that it will provide notice of violation through its Planning Department to any individual it believes is in violation of the STR Ordinance, and then it will refer non-compliance to its county attorney to seek injunctions and levy fines against owners of such property within the county.

## PROVISIONS OF THE STR ORDINANCE

15.     The County claims that the STR Ordinance was necessary due to the claim that "Iredell County is experiencing an increase in the number of complaints about short-term rentals (vacation rentals)."

16.     The STR Ordinance defines a short-term rental ("STR") as "A primary or accessory dwelling unit that is rented for personal use or vacation, leisure, or

recreation purposes for periods 90 days or less. This can include whole house and partial house rental."

17. Under the new STR Ordinance, no STR shall be allowed in Iredell County unless "A property owner shall submit a request for a zoning permit in accordance with Chapter 8 of this Ordinance."

18. The zoning permit application requires the property owner to disclose their name, the location of the property, and other information set forth in a permit application that requires registration or enrollment in the County website to access.

19. The zoning permit application allows the county to collect information that could be used to create a list of STRs in the county and a list of all individuals and companies who are allowed to provide and who have applied to have STRs within the county.

20. The application is mandatory to obtain authority to have a STR and is a registration process imposed on owners of real property within the County.

21. Upon information and belief, Iredell County employs one or more Zoning Administrators within the Planning Department or other office of the County government.

22. The County provides the Zoning Administrator with a grant of new powers within the STR Ordinance.

23. The Zoning Administrator has the power to demand "the deed reference of the subject property, the number of bedrooms, location of signage and adequate parking" as part of the application and registration process to obtain a STR permit.

24. The STR Ordinance further gives the Zoning Administrator the power to unilaterally deny or revoke a zoning permit in the event:

      a. "The property owner submits incomplete or inaccurate information, or fails to illustrate how the requirements set forth [within the STR Ordinance] will be met;" or

b. "The property owner has previously incurred two (2) or more verified zoning violations of this Performance Requirement (R68) at the subject property."

25. Once revoked by the Zoning Administrator, the STR permit cannot be approved until one (1) year has passed following the date of the revocation of the permit.

26. Although the STR Ordinance initially appears to allow for a possible grandfather provision consistent with Chapter 15 of the Zoning Ordinance, the reality is the STR Ordinance states that a property currently with "a legal non-conforming use and/or structure, a STR is permissible provided Chapter 15 [Non-Conformities] **and the requirements set forth herein [the STR Ordinance] are met.**" (emphasis added).

27. The STR Ordinance makes currently legal non-conforming properties subject to the STR Ordinance, judicial injunction, and fines by imposing new zoning requirements on existing properties.

28. The STR Ordinance imposes a maximum occupancy on STRs that "shall not exceed two (2) persons per bedroom, plus two (2) additional persons," and "Children under three (3) years of age shall be excluded from the occupancy calculation."

29. The County does not regulate occupancy on any other residential properties, including neighbors adjacent to regulated STR properties.

30. The occupancy numbers, seemingly pulled out of a hat, are arbitrary and capricious.

31. The number of bedrooms is not based on the number of bedrooms permitted by the County through a septic permit, but by the Iredell County tax records for the subject property.

32. Although the Board of Commissioners, specifically Commissioner Houpe, notes that the STR Ordinance and occupancy is based on what the septic system at the property allows, the reality is that occupancy is determined by tax records.

33. Among many other provisions, "Events" are regulated by the new STR Ordinance.

34. The ordinance states, "STRs shall not be advertised or used to hold special events. Any large gatherings that exceed the occupancy limits of the zoning permit including but not limited to weddings, parties, reunions or other large gatherings, are prohibited. The property owner shall not make the STR available to short-term rental guests for a period of less than overnight."

35. Given that the STR Ordinance restricts both whole-home and partial-home rentals, along with requiring all properties within the County that serve as a STR for any period of time, absurd violations will result under the plain language of the ordinance.

36. For example, a home that is permitted under the registration system required by the STR Ordinance and only used for two months out of the year as a vacation rental, but occupied by the homeowners as their primary residence for the remaining ten months, will be prohibited from hosting their daughter's wedding, having a party, or scheduling a family-reunion, or any other large gathering at the subject property.

37. However, neighbors adjacent to those prohibited from hosting "events" who do not have the same permit to allow STRs, will be free to use their homes for all such celebrations and events.

## JURISDICTION AND VENUE

38. The County has no immunity for the constitutional claims and has purchased liability insurance or otherwise waived immunity for all claims asserted in this action.

39. This action concerns real property located in Iredell County as more particularly described herein.

## FACTUAL ALLEGATIONS

40. Constance and Lawrence have purchased numerous properties throughout Iredell County.

5

41. The properties identified herein were purchased by Constance for the primary purpose of being used as STRs to meet the demand of vacationers traveling to North Carolina to enjoy North Carolina's abundant natural resources and generous hospitality.

42. To afford these properties, Constance and Lawrence have taken loans and made significant investments of time and money to prepare, maintain and advertise the properties as STRs.

43. On October 6, 2014, Constance purchased 643 Isle of Pines Rd. Mooresville, NC 28117 for Six Hundred Fifty Thousand and 00/100 Dollars ($650,000.00), which is recorded in Book 2321, Page 2001 of the Iredell County Register of Deeds Office.

44. Soon after purchasing 643 Isle of Pines Rd., Lawrence and Constance began to renovate the property to make it suitable for vacation rentals.

45. Constance hired contractors to do substantial renovations including plumbing, electrical, flooring, and general repair, which cost approximately Four Hundred Eighty Thousand and 00/100 Dollars ($480,000.00).

46. All renovations were completed before the passage of the STR Ordinance, which capped the number of occupants, imposed specific parking restrictions, and created an application and registration requirement to be permitted to offer vacation rentals.

47. From day one, Constance has operated 643 Isle of Pines Rd. as a vacation-rental business in a very professional manner and has received only one complaint from either neighbors or local officials about the individuals to whom it has rented since September 2020.

48. This is despite having approximately forty (40) rentals each year, which accounts for approximately two hundred one (201) nights of rentals per year.

49. Furthermore, Constance has paid approximately Sixty-One Thousand, Eight Hundred Eighty-Four and 16/100 Dollars ($61,884.16) per year for management expenses to ensure that the property is maintained and that guests

comply with local rules and regulations set forth as "house-rules" developed by Constance and to ensure compliance with county or state laws and regulations.

50. Since the purchase of 643 Isle of Pines Rd., Constance has not ceased its use of the property as a STR for any period greater than one (1) year.

51. On December 4, 2017, Constance purchased 395 Barber Loop Mooresville, NC 28117 for One Million, Two Hundred Twenty-One Thousand, Five Hundred and 00/100 Dollars ($1,221,500.00), which is recorded in Book 2527, Page 517 of the Iredell County Register of Deeds Office.

52. Soon after purchasing 395 Barber Loop, Lawrence and Constance began to renovate the property to make it suitable for vacation rentals.

53. Constance hired contractors to do substantial renovations including plumbing, electrical, flooring, and general repair, which cost approximately Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00).

54. All renovations were completed before the passage of the STR Ordinance, which capped the number of occupants, imposed specific parking restrictions, and created an application and registration requirement to be permitted to offer vacation rentals.

55. From day one, Constance has operated 395 Barber Loop as a vacation-rental business in a very professional manner and has received only three complaints from either neighbors or local officials about the individuals to whom it has rented since September 2020.

56. This is despite having approximately thirty (30) rentals each year, which accounts for approximately one hundred eighty-five (185) nights of rentals per year.

57. Furthermore, Constance has paid approximately One Hundred Four Thousand, Three Hundred Ten and 58/100 Dollars ($104,310.58) per year for management expenses to ensure that the property is maintained and that guests comply with local rules and regulations set forth as "house-rules" developed by Constance and to ensure compliance with county or state laws and regulations.

7

58. Since the purchase of 395 Barber Loop, Constance has not ceased its use of the property as a STR for any period greater than one (1) year.

59. On April 9, 2015, Constance purchased 135 Misty Cove Ln. Mooresville, NC 28117 for Six Hundred Sixty Thousand and 00/100 Dollars ($660,000.00), which is recorded in Book 2350, Page 144 of the Iredell County Register of Deeds Office.

60. Soon after purchasing 135 Misty Cove Ln., Lawrence and Constance began to renovate the property to make it suitable for vacation rentals.

61. Constance hired contractors to do substantial renovations including plumbing, electrical, flooring, and general repair, which cost approximately Four Hundred Thirty Thousand and 00/100 Dollars ($430,000.00).

62. All renovations were completed before the passage of the STR Ordinance, which capped the number of occupants, imposed specific parking restrictions, and created an application and registration requirement to be permitted to offer vacation rentals.

63. From day one, Constance has operated 135 Misty Cove Ln. as a vacation-rental business in a very professional manner and has received zero (0) complaints from either neighbors or local officials about the individuals to whom it has rented since September 2020.

64. This is despite having approximately fifty (50) rentals each year, which accounts for approximately two hundred nine (209) nights of rentals per year.

65. Furthermore, Constance has paid approximately Sixty-Five Thousand, Three Hundred Thirteen and 80/100 Dollars ($65,313.80) per year for management expenses to ensure that the property is maintained and that guests comply with local rules and regulations set forth as "house-rules" developed by Constance and to ensure compliance with county or state laws and regulations.

66. Since the purchase of 135 Misty Cove Ln., Constance has not ceased its use of the property as a STR for any period greater than one (1) year.

67. On July 11, 2013, Lawrence purchased 727 Isle of Pines Rd. Mooresville, NC 28117 for Seven Hundred Forty-Two Thousand, Five Hundred and

00/100 Dollars ($742,500.00), which is recorded in Book 2253, Page 1633 of the Iredell County Register of Deeds Office.

68. Sometime after purchasing 727 Isle of Pines Rd., Lawrence and his wife began to renovate the property to make it suitable for vacation rentals.

69. Lawrence hired contractors to do substantial renovations including plumbing, electrical, flooring, and general repair, which cost approximately Four Hundred Thirty Thousand and 00/100 Dollars ($430,000.00).

70. All renovations were completed before the passage of the STR Ordinance, which capped the number of occupants, imposed specific parking restrictions, and created an application and registration requirement to be permitted to offer vacation rentals.

71. Since Lawrence began operating 727 Isle of Pines Rd. as a vacation-rental he has received zero (0) complaints from either neighbors or local officials about the individuals to whom he has rented since September 2020.

72. This is despite having approximately forty-seven (47) rentals each year, which accounts for approximately two hundred twenty-eight (228) nights of rentals per year.

73. Furthermore, Lawrence has paid approximately Fifty-Five Thousand, Three Hundred Forty-Seven and 47/100 Dollars ($55,347.47) per year for management expenses to ensure that the property is maintained and that guests comply with local rules and regulations set forth as "house-rules" developed by Lawrence and a property management company and to ensure compliance with county or state laws and regulations.

74. Since the time 727 Isle of Pines Rd. began to be used as a STR, Lawrence has not ceased his use of the property as a STR for any period greater than one (1) year.

75. All properties described herein as STRs are referenced collectively as "Properties".

76. On October 17, 2023, the County amended the Zoning Ordinance to regulate all STRs.

9

77. The new STR Ordinance was enacted and will be enforced beginning January 1, 2024.

78. The STR Ordinance defines "Short-term rental (vacation rental)" as a "primary or accessory dwelling unit that is rented for personal use or vacation, leisure, or recreation purposes for periods 90 days or less. This can include whole house and partial house rental."

79. The new ordinance amended Section 3.1 of the Zoning Ordinance to cap and regulate STRs throughout the county with an elaborate permitting system.

80. Specifically, individuals who wish to operate a vacation rental under the ordinance must register with the County website and obtain a permit.

81. As a result of the new restrictions, a property owner who was already exercising his or her right to legally offer vacation rentals will lose the right to do so under the same conditions as they have and without enrolling in a mandatory permitting system.

82. The mandatory permitting systems is a thinly disguised registration requirement which violates NCGS 160D-1207(c) as decided by Schroeder v. City of Wilmington, 282 N.C. App 558, 872 S.E.2d 58 (2022).

83. The ordinance requires the posting of a 24/7 accessible contact posted visibly to the public at the entrance of the driveway, a further extension of the illegal registration scheme imposed by the ordinance.

84. Eight and one-half (8.5) guests is the average number of guests or occupants who typically reside in STRs, which is taken from a sample of numerous STRs across the County.

85. Because the occupancy restriction of the STR Ordinance does not consider any facts other than number of bedrooms identified in existing tax records, there is no rational basis for this limitation.

86. Upon information and belief, the County passed the STR Ordinance based upon the complaints by various citizens of undocumented complaints, complaints that did not violate the law, but that made citizens unhappy.

87. That upon information and belief, there is no evidence in the minutes or records of meetings that the County had any information that the STR Ordinance would:

    a. Lessen congestion in streets, or that congestion was a problem;

    b. Secure safety from fire, panic or other dangers, or that they were a problem;

    c. Promote health or general welfare, or that STRs presented a problem to health or general welfare

    d. Provide adequate light and air, or that it was a problem; or

    e. Prevent the overcrowding of land, avoid undue concentration of population, or facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements, or that any of these issues were a problem.

88. Had the STR Ordinance been in effect when Plaintiffs were shopping for properties, they would not have bought vacation-rental properties throughout Iredell County.

89. The STR Ordinance was not in effect at the time the Properties were acquired, nor were Plaintiffs aware that the County had plans to strip certain property owners of their right to rent, which made Plaintiffs feel comfortable purchasing these Properties.

## DECLARATORY RELIEF
## FIRST CLAIM FOR RELIEF
### Vested Rights

90. The allegations of the preceding paragraphs are hereby re-alleged and incorporated herein by reference as if alleged in full.

91. By voting to enact the STR Ordinance, the County attempts to deny Plaintiffs the right to engage in vacation rentals at their properties and arbitrarily restricts other activity previously deemed lawful at the Properties.

92. These violations include use of a registration or permitting system, imposing unreasonable caps on occupancy, parking requirements, and taking property without just compensation.

93. Specifically, as set forth herein, the Plaintiffs have spent considerable funds over the years to maintain, manage, and advertise these properties as vacation rentals.

94. Given the reliance on the laws and restrictions imposed by the County at the time of conveyance, certain rights were vested in the land and prohibit or limit what Defendant can lawfully regulate and prohibit.

95. These "vested rights" of Plaintiffs are codified by statute in N.C. Gen. Stat. § 160D-108 and by common law generally referenced therein.

96. Defendant nevertheless passed and plans to enforce the STR Ordinance.

97. Therefore, an actual controversy exists between the parties.

98. A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling these particular legal issues between the parties and thereby afford relief from much of the uncertainty and controversy giving rise to this proceeding.

99. Accordingly, under N.C. Gen. Stat. §§ 1-253 et seq., and Rule 57 of the North Carolina Rules of Civil Procedure, the Plaintiffs pray for declaratory and related relief declaring that the STR Ordinance is violative of the North Carolina Constitution.

100. The Plaintiffs are also entitled to damages, both nominal and compensatory, for the violation of their rights by Defendant through passage and enforcement of the STR Ordinance.

## DECLARATORY RELIEF
## SECOND CLAIM FOR RELIEF
### Ultra Vires, In Excess of Powers, and Preempted by State Statute

101. The allegations of the preceding paragraphs are hereby re-alleged and incorporated herein by reference as if alleged in full.

## REGULATION OF STRS

102. Except in limited respects, at the time the County enacted the STR Ordinance, state law conferred no authority upon Defendant to regulate vacation

rentals. Thus, the STR Ordinance is ultra vires and in excess of the powers granted to a municipal corporation or body politic under North Carolina law.

103. Moreover, the STR Ordinance is both implicitly and explicitly preempted by state statute.

104. The authority to regulate vacation rentals is exercised by the state pursuant to the Vacation Rental Act, N.C. Gen. Stat. §§ 42A-1 et seq.

105. Part of the Vacation Rental Act, in particular N.C. Gen. Stat. § 42A-3(a), as amended by Session Law 2022-62 (S.B. 768), expressly provides that, "G.S. 160D-1117 applies to properties covered under this Chapter."

106. Section 160D-1117 regulates government inspections of compliance with building codes and states specifically, "Inspections of dwellings shall follow the provisions of G.S. 160D-1207."

107. G.S. 160D-1207(c) in turn states, in relevant part:

> **In no event may a local government** do any of the following: (i) **adopt or enforce any ordinance that would require any owner** or manager of rental property **to obtain any permit** or permission under Article 11 or Article 12 of this Chapter from the local government **to lease or rent residential real property** or to register rental property with the local government, except for those individual properties that have more than four verified violations in a rolling 12-month period or two or more verified violations in a rolling 30-day period, or upon the property being identified within the top ten percent (10%) of properties with crime or disorder problems as set forth in a local ordinance, (ii) require that an owner or manager of residential rental property enroll or participate in any governmental program as a condition of obtaining a certificate of occupancy, (iii) levy a special fee or tax on residential rental property that is not also levied against other commercial and residential properties, unless expressly authorized by general law or applicable only to an individual rental unit or property described in clause (i) of this subsection and the fee does not exceed five hundred dollars ($500.00) in any 12-month period in which the unit or property is found to have verified violations, (iv) provide that any violation of a rental registration ordinance is punishable as a criminal offense, or (v) require any owner or manager of rental property to submit to an inspection before receiving any utility service provided by the local government. (emphasis added).

108. The STR Ordinance violates N.C. Gen. Stat. § 160D-1207(c) and is thus both clearly and unambiguously preempted by express state law, rendering the ordinance void and of no effect.

109. Section 160D-1207(c) was in effect when the County enacted the STR Ordinance.

110. Furthermore, on July 1, 2019, Session Law 2019-73 (S.B. 483) was enacted to make clear what was already true, i.e., that the preemption language of N.C.G.S. § 160A-424(c), which was later recodified as Section 160D-1207(c), applied to vacation rentals. This law was effective upon its enactment on July 1, 2019, and these provisions are still in effect today.

111. On July 11, 2019, the Legislature passed Session Law 2019-111 (S.B. 355), an act which simply relocated N.C. Gen. Stat.§ 160A-424(c) to § 160D-1207(c). The relevant legislative language remained the same, with an effective date of January 1, 2021.

112. On May 4, 2020, the Legislature passed Session Law 2020-3 (S.B. 704) which changed the effective date of Session Law 2019-111 (S.B. 355) to August 1, 2021.

113. The Vacation Rental Act, as amended to reference and incorporate the preemption language discussed above, is still the law today.

114. Session Law 2019-111 (S.B. 355), as amended by Session Law 2020-3 (S.B. 704), became effective August 1, 2021, and "applies to ordinances adopted before, on, and after the effective date."

115. Prior to the passage of the new STR Ordinance, the Plaintiffs made substantial investments to renovate the Properties.

116. Current law prohibits the County from passing the STR Ordinance.

117. To the extent there is any ambiguity in existing law, it is resolved in favor of the Plaintiffs' free use of their property.

118. The Legislature indicated its understanding that there was an ambiguity in the existing law by passing a statutory clarification. See Session Law

2019-11 (S.B. 355) (purporting to "Clarify Statutes Regarding Local Planning and Development Regulation").

119.    On information and belief, the purpose of delaying the effective date of the statutory clarification until August 1, 2021, is to respect the vested rights and settled expectations of property owners.

120.    The STR Ordinance is especially void and unenforceable as to the Plaintiffs since the Properties do not meet the requirements of "verified violations," as that term is defined, and it is not within the top 10% of properties with crime or disorder problems as set forth in a local ordinance.

121.    Defendant nevertheless enacted and plans to enforce, and likely will enforce in the future, the STR Ordinance.

## EXCEEDING SCOPE OF ZONING AUTHORITY

122.    N.C. Gen. Stat. § 160D-702 authorizes local government to:

regulate and restrict the height, number of stories, and size of buildings and other structures; the percentage of lots that may be occupied; the size of yards, courts, and other open spaces; the density of population; the location and use of buildings, structures, and land. A local government may regulate development, including floating homes, over estuarine waters and over lands covered by navigable waters owned by the State pursuant to G.S. 146-12. A zoning regulation shall provide density credits or severable development rights for dedicated rights-of-way pursuant to G.S. 136-66.10 or G.S. 136-66.11. Where appropriate, a zoning regulation may include requirements that street and utility rights-of-way be dedicated to the public, that provision be made of recreational space and facilities, and that performance guarantees be provided, all to the same extent and with the same limitations as provided for in G.S. 160D-804 and G.S. 160D-804.1.

123.    The STR Ordinance imposes upon owners not only a regulation of land use, but a regulation on how businesses are operated within the land use.

124.    The STR Ordinance limits and regulates through zoning the performance use of bedrooms, limiting it to two persons per bedroom, plus an additional arbitrary two additional persons.

125.    No other provision of the Iredell County Zoning Ordinances seeks to regulate not only the land use, but the performance of the land use, as the STR Ordinance seeks to do.

126. The STR Ordinance regulates advertising, compelling speech from property owners to advertise in a certain manner, offsite from the actual land use.

127. The performance standards and mandated speech to third parties in online or other advertising is not authorized by statute and exceeds the scope of authority granted by the Legislature to Iredell County.

128. Notwithstanding such preemption, the Board of Commissioners failed to make findings related to conditions that could even support regulating STRs.

129. The STR Ordinance was not considered, debated, or passed to advance conditions within the scope of regulations that our Legislature envisioned.

130. Passage of the STR Ordinance ultimately relied upon unverified and undocumented complaints of "citizens".

131. Therefore, the STR Ordinance was arbitrarily and capriciously developed and passed by the County, in violation of the laws established to govern the regulation of land use.

132. For the reasons set forth in this Second Claim for Relief, an actual controversy exists between the parties.

133. A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties and thereby afford relief from the uncertainty and controversy giving rise to this proceeding.

134. Accordingly, under N.C. Gen. Stat. §§ 1-253 et seq., and Rule 57 of the North Carolina Rules of Civil Procedure, the Plaintiffs pray for declaratory and related relief declaring that the STR Ordinance is *ultra vires*, in excess of statutory authority, and preempted and thus void and unenforceable.

135. The Plaintiffs are also entitled to damages, both nominal and compensatory, for the violation of their rights by Defendant through enforcement of the STR Ordinance.

**DECLARATORY RELIEF**
**THIRD CLAIM FOR RELIEF**
**Facial and As Applied Unconstitutionality**
**Under the North Carolina Constitution**

136. The allegations of the preceding paragraphs are hereby re-alleged and incorporated herein by reference as if alleged in full.

137. Both facially and as applied, the STR Ordinance violates several provisions of the North Carolina Constitution, including provisions that recognize specifically enumerated rights.

138. The restrictions in the STR Ordinance are not only unconstitutional, but the process established by the STR Ordinance is itself constitutionally infirm and invalid.

139. The system established by the County under the STR Ordinance violates the Plaintiffs' rights to substantive and procedural due process under Article I, § 19, of the North Carolina Constitution.

140. North Carolina's Law of the Land Clause, N.C. Const. Article I, § 19, protects an individual's rights to procedural and substantive due process.

141. The vested rights doctrine is rooted in North Carolina's Law of the Land Clause.

142. The vested rights doctrine is a constitutional limitation on the state's ability to restrict private property uses through the enactment of zoning ordinances.

143. The vested-rights doctrine prohibits municipalities from retroactively depriving a person of a vested property right.

144. If the Legislature did remove the Plaintiffs' preemption claim through legislative recodification, purportedly clarifying that local governments have the power to require permits to rent contrary to plain statutory text, then such an interpretation of the statute improperly empowers the County to retroactively divest the Plaintiffs of a vested property right, i.e., the right to rent their property.

145. A property owner has a vested right in a property use if they can show the following:

    a. (1) substantial expenditures,

    b. (2) made in good faith reliance,

    c. (3) on valid governmental approval or at a time when no government approval was required,

d. (4) resulting in the party's detriment.

146. The Plaintiffs have a vested right in the use of the Properties for vacation rentals.

147. Plaintiffs made substantial expenditures by purchasing and renovating the Properties to use for vacation rentals.

148. Plaintiffs made these expenditures in good-faith reliance on vacation rentals being a lawful use of their property at the time they made the investments.

149. Vacation rentals were a lawful use of the Properties when the Plaintiffs made substantial expenditures to use their homes as a vacation rental.

150. Plaintiffs listed their properties as a vacation rental on multiple media platforms and available to the public before the STR Ordinance went into effect.

151. If the Defendant is allowed to strip the Plaintiffs of their right to use their property as a vacation rental, the Plaintiffs will lose their substantial investments in renovating the Properties for vacation rentals.

152. If the Defendant is allowed to strip the Plaintiffs of their right to use their property as a vacation rental, the Plaintiffs will lose their substantial income and business rights flowing from the Properties as related to their vacation-rental use.

153. If the Defendant is allowed to strip the Plaintiffs of their right to use their property as a vacation rental, then the Plaintiffs will be deprived of a use that was lawful both before and during the period of time in which they made substantial investments to make the Properties suitable for such lawful use.

154. If the Defendant is allowed to take the Plaintiffs' right to engage in vacation rentals retroactively then the Plaintiffs will be deprived of the ability to use the Properties for vacation rentals.

155. Without the right to use their property as a vacation rental, the Plaintiffs cannot afford to keep the Properties and they will be forced to sell.

156. The system established by the Defendant under the STR Ordinance also treats equally situated individuals differently without adequate justification for

that disparate treatment and violates the Plaintiffs' rights to equal protection under Article I § 19, of the North Carolina Constitution.

157. The system established by the County under the STR Ordinance grants exclusive or separate emoluments or privileges from the community in violation of Article I § 32, of the North Carolina Constitution.

158. The system established by the County under the STR Ordinance creates a monopoly in violation of Article I § 34, of the North Carolina Constitution.

159. The system established by the County under the STR Ordinance violates the general laws provision of Article XIV § 3, of the North Carolina Constitution.

160. The system established by the County under the STR Ordinance violates the Plaintiffs' long-recognized fundamental right under the North Carolina Constitution to conduct a lawful business and earn a livelihood.

161. Defendant nevertheless has enacted and plans to enforce, in the future, the STR Ordinance.

162. Therefore, an actual controversy exists between the parties.

163. A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties and thereby afford relief from much of the uncertainty and controversy giving rise to this proceeding.

164. Accordingly, under N.C. Gen. Stat. §§ 1-253 et seq., and Rule 57 of the North Carolina Rules of Civil Procedure, the Plaintiffs pray for declaratory and related relief declaring that the STR Ordinance is violative of the North Carolina Constitution.

165. The Plaintiffs are also entitled to damages, both nominal and compensatory, for the violation of their rights by Defendants/Respondents through enforcement of the STR Ordinance.

**FOURTH CLAIM FOR RELIEF**
**Request for Preliminary and Permanent Injunctions**

166. The allegations of the preceding paragraphs are hereby re-alleged and incorporated herein by reference as if alleged in full.

167.    Enforcement of the STR Ordinance will result in the loss of substantial sums of money by Plaintiffs due to lost rental income.

168.    Enforcement of the STR Ordinance substantially impairs the Plaintiffs' ability to utilize their property as they wish and to earn a living through the use of that property, and it frustrates the reasonable investment-backed expectations that the Plaintiffs had for their property.

169.    Enforcement of the STR Ordinance deprives the Plaintiffs of the use and enjoyment of their property, which once lapsed, can never be recovered.

170.    Plaintiffs, and like situated individuals and entities throughout Iredell County, have contractual obligations to third parties that pre-date the passage of the STR Ordinance, and the fulfillment of those contractual obligations would put them in violation of the STR Ordinance.

171.    Breaching the contractual obligations to third parties would cause Plaintiffs to suffer great loss and damages to their reputation and good will which has been carefully cultivated over the past decade.

172.    Should Plaintiffs comply with the STR Ordinance, they would be registering their properties with Iredell County, which is violative of N.C. Gen. Stat. § 160D-1207(c).

173.    Once the information is collected by Iredell County, and the property is "registered" through the zoning ordinance permitting scheme, that information is public record, and cannot be destroyed or undone via further court proceedings.

174.    Great harm will be suffered by the Plaintiffs without a preliminary and permanent injunction.

175.    The balance of equities weighs in favor of the Plaintiffs, and there is no just reason to delay an injunction.

176.    Therefore, under Rule 65 of the North Carolina Rules of Civil Procedure, the Plaintiffs respectfully pray for preliminary and permanent injunctive relief enjoining enforcement of the STR Ordinance by Defendant as well as its officers, agents, servants, employees, and attorneys, and those persons in

20

active concert or participation with them who receive actual notice in any manner of the order by personal service or otherwise.

**ALTERNATIVE CAUSE OF ACTION**
**FIFTH CLAIM FOR RELIEF**
**Declaratory Relief as Non-Conforming Properties**

177. The allegations of the preceding paragraphs are hereby re-alleged and incorporated herein by reference as if alleged in full.

178. Assuming arguendo that the STR Ordinance does not violate the numerous laws and protections set forth herein, the County's own Zoning Ordinance prohibits enforcement of the STR Ordinance against properties already offering STRs.

179. Specifically, Iredell County Zoning Ordinance Chapter 15: Non-Conformities, Section 15.4 Non-Conforming Uses states, "This category of non-conformances consists of uses at the effective date of this Ordinance for purposes not permitted in the district in which they are located. Such uses may be continued [...]"

180. There are certain limitations set forth in Section 15.4.

181. The applicable limitation to this action relates to when the non-conforming use is discontinued for a period in excess of one (1) year, any new use must be in conformance with the regulation of the district in which it is located.

182. The Plaintiffs have previously operated STRs on all Properties.

183. The Plaintiffs have continuously operated STRs on said Properties.

184. The Plaintiffs have the right to continue their alleged non-conforming use of the Properties as STRs, despite the passage of the STR Ordinance.

185. Defendant nevertheless passed the STR Ordinance and plans to enforce the STR Ordinance beginning January 1, 2024, against all property owners who do not register and obtain a permit to operate a STR at the subject property.

186. A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties and thereby afford relief from much of the uncertainty and controversy giving rise to this proceeding.

187. Accordingly, under N.C. Gen. Stat. §§ 1-253 et seq., and Rule 57 of the North Carolina Rules of Civil Procedure, the Plaintiffs pray for declaratory and related relief declaring that the STR Ordinance does not prohibit the continuance of STRs on the Properties and any other property in the County that has similarly been used as STRs and would be made "non-conforming" upon enactment of the STR Ordinance.

188. The Plaintiffs are also entitled to damages, both nominal and compensatory, for the violation of their rights by Defendants/Respondents through enactment of the STR Ordinance.

## NOTICE OF REQUEST FOR RECOVERY OF REASONABLE ATTORNEYS' FEES AND COSTS UNDER N.C. GEN. STAT. § 6-21.7

189. The allegations of the preceding paragraphs are hereby re-alleged and incorporated herein by reference as if alleged in full.

190. Plaintiffs hereby give notice that they seek the recovery of reasonable attorneys' fees and costs under N.C. Gen. Stat. § 6-21.7.

PRAYER FOR RELIEF WHEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:

1. Enter a declaratory judgment finding that the STR Ordinance no longer be applied by the County and its agents;

2. Enter a declaratory judgment finding that the STR Ordinance is arbitrary and capricious;

3. Enter a declaratory judgment finding that Plaintiffs are permitted to continue engaging in vacation rentals of the Properties without any time limit by which they must cease engaging in such rentals and directing that Plaintiffs be permitted to engage in vacation rentals regarding any other residential property they may acquire in the future in Iredell County;

4. Enter a declaratory judgment finding that the STR Ordinance is unlawful, preempted, and unconstitutional, both facially and as applied to Plaintiffs;

187.    Accordingly, under N.C. Gen. Stat. §§ 1-253 et seq., and Rule 57 of the North Carolina Rules of Civil Procedure, the Plaintiffs pray for declaratory and related relief declaring that the STR Ordinance does not prohibit the continuance of STRs on the Properties and any other property in the County that has similarly been used as STRs and would be made "non-conforming" upon enactment of the STR Ordinance.

188.    The Plaintiffs are also entitled to damages, both nominal and compensatory, for the violation of their rights by Defendants/Respondents through enactment of the STR Ordinance.

## NOTICE OF REQUEST FOR RECOVERY OF REASONABLE ATTORNEYS' FEES AND COSTS UNDER N.C. GEN. STAT. § 6-21.7

189.    The allegations of the preceding paragraphs are hereby re-alleged and incorporated herein by reference as if alleged in full.

190.    Plaintiffs hereby give notice that they seek the recovery of reasonable attorneys' fees and costs under N.C. Gen. Stat. § 6-21.7.

PRAYER FOR RELIEF WHEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:

1.      Enter a declaratory judgment finding that the STR Ordinance no longer be applied by the County and its agents;

2.      Enter a declaratory judgment finding that the STR Ordinance is arbitrary and capricious;

3.      Enter a declaratory judgment finding that Plaintiffs are permitted to continue engaging in vacation rentals of the Properties without any time limit by which they must cease engaging in such rentals and directing that Plaintiffs be permitted to engage in vacation rentals regarding any other residential property they may acquire in the future in Iredell County;

4.      Enter a declaratory judgment finding that the STR Ordinance is unlawful, preempted, and unconstitutional, both facially and as applied to Plaintiffs;

5.      Grant preliminary and permanent injunctive relief enjoining enforcement of the STR Ordinance by Defendant, Iredell County, as well as its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice in any manner of the order by personal service or otherwise;

6.      In the alternative, if the Court finds that the STR Ordinance does not violate any law or protection afforded Plaintiffs, to enter a declaratory judgment that the Properties, and any other STR, similarly situated, may continue to operate as STRs under the Non-Conforming Uses provisions of the County Zoning Ordinance.

7.      Grant Plaintiffs damages, both compensatory and nominal, as allowed by law;

8.      Grant Plaintiffs attorneys' fees and costs of the action, as allowed by law, including, but not necessarily limited to, N.C.G.S. § 6-21.7;

9.      Grant Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

10. Tax costs of this action against Defendants; and

11. Grant Plaintiffs such other and further relief, both at law and in equity, as this Court may deem them to be entitled.


Respectfully submitted this the 21st day of December, 2023.


**MARTIN & GIFFORD, PLLC**

By: _S. Adam Stallings by w/permission_
S. Adam Stallings
N.C. Bar #: 37069
301 North Main St., Ste 2200
Winston-Salem, NC 27101
adam@martingiffordlaw.com


By: _John Wait by w/permission_
John Wait
N.C. Bar #: 40152
john@martingiffordlaw.com

**RALSTON BENTON
BYERLEY & MOORE, PLLC**

By: _____
Matthew L. Benton
N.C. Bar #: 35164
335 N. Center St.
Statesville, NC 28677
mbenton@rbbmlaw.com
*Attorneys for Plaintiffs*

STATE OF NORTH CAROLINA

COUNTY OF IREDELL

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.

GRANT LAWRENCE,                        )
CONSTANCE HOLDINGS, LLC,              )
                                       )
      Plaintiffs,                     )
                                       )         AFFIDAVIT
v.                                     )
                                       )
IREDELL COUNTY,                        )
      Defendant.                     )
                                       )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, Grant Lawrence, being first duly sworn and deposes, does hereby make the following statements:

1. That I am a member of Constance Holdings, LLC, a North Carolina Limited Liability Company.

2. That since 2013, Constance Holdings, LLC has owned and operated lake front properties as short term vacation rentals, professionally managed by a property management company.

3. I and Constance Holdings, LLC have invested millions of dollars in our shot term vacation (STR) rental properties, under a business plan which is a decade in the making.

4. We relied on the laws in place when developing our plan and properties, to be in compliance with state and local regulations governing STRs.

5. The use of these STR properties is a grandfathered right, and I am informed, a "vested right."

6. That enforcement of the STR Ordinance will deprive Constance Holdings, LLC of revenue, but it also deprives Constance Holdings, LLC and its members of the use of its property in a manner that it sees fit, and that it has relied upon in the past decade. The restriction of use for even a short period of time can never be recaptured or compensated for.

7.      Even if the County argues that the vested use of Plaintiff's property is allowed under the ordinance, the STR ordinance has so curtailed the economic viability of the vested right, that it has effectively precluded Plaintiff's use of the property for STRs.

8.      Constance and like-situated individuals and entities throughout Iredell County have contractual obligations to third parties that pre-date the passage of the STR Ordinance, and the fulfillment of those contractual obligations would put them in violation of the STR Ordinance.

9.      Enforcement of the STR Ordinance would put Constance and like situated individuals and entities in Iredell County in a catch 22, comply with the ordinance and terminate contracts, costing reputation and good will (in addition to the damage inflicted on innocent third parties), or defy the ordinance and suffer the wrath of government enforcement.

10.     Compliance with the STR Ordinance would require the registration of properties with Iredell County through a thinly veiled zoning permit application, which is clearly in violation of NCGS § 160D-1207(c).

11.     As I am advised and informed, once this information is submitted, it will be a public record, and subject to North Carolina public record laws, and cannot be deleted or stricken, and Iredell County will have a registration of STRs, despite the violation of law.

12.     Allowing the STR Ordinance to continue with a restraining order or injunction will cause myself and Constance Holdings, LLC immediate and irreparable injury, loss, and/or damage.

This the 18th day of December, 2023.

_____ Affiant
Grant Lawrence

Sworn to and subscribed before me
This 18th day of December, 2023.

_____
Notary Public

My Commission Expires: 11.18.2024

AMY M. GOODMAN
Notary Public
Iredell County, North Carolina