**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:24-CV-00003-KDB-DCK**

**CAROLINA DESTINATIONS, LLC, STARSAIL ADVENTURES, LLC, AVANTSTAY SOUTHEAST, LLC,**

**Plaintiff,**

**v.**

**IREDELL COUNTY,**

**Defendant.**

**ORDER**

**THIS MATTER** is before the Court on Plaintiff Starsail Adventures, LLC, Caroline Destinations, LLC, and AvantStay Southeast, LLC's Motion to Remand (Doc. No. 15). The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT in part** and **DENY in part** the motion.

## I. LEGAL STANDARD

District courts are "courts of limited jurisdiction. They possess only that power authorized by Constitution and Statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). Under 28 U.S.C. § 1441, a defendant may remove a case from state court to federal district court if the district court has original jurisdiction.

When faced with a motion to remand, a party seeking removal to federal court bears the burden of establishing federal jurisdiction. *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (quoting *In re Blackwater Security Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006)). Removal jurisdiction raises significant federalism concerns; therefore, in considering a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Goucher Coll. v. Cont'l Cas. Co.*, 541 F. Supp. 3d 642, 647 (D. Md. 2021) (quoting *Richardson v. Phillip Morris Inc.*, 950 F. Supp. 700, 702 (D. Md. 1997)); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999); *Syngenta Crop. Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002).

## II. FACTS AND PROCEDURAL HISTORY

This case arises out of a zoning text amendment enacted by the Iredell County Board of Commissioners on October 17, 2023. *See* Doc. No. 1-2 at ⁋ 1. The amendment altered the County's ordinance on short term vacation rental ("STR") zoning requirements (the "STR Ordinance" or "Ordinance"). *Id.* The STR Ordinance, as amended, applies to all dwellings rented for personal, vacation, leisure, or recreational use for periods of 90 days or less and requires the property owners to submit a request for a zoning permit in order to operate an STR. *Id.* at ⁋⁋ 32-33. The permit application requires disclosure of the property owner's name, location of the property, the number of bedrooms, location of signage and adequate parking, and allows the Zoning Administrator to obtain the deed reference of the property. *Id.* at ⁋ 34. The Ordinance applies retroactively, meaning that properties currently operating as STRs could be non-conforming under the STR Ordinance. *Id.* at ⁋ 37.

The Ordinance also imposes restrictions on the use of the property being rented out. For example, occupancy cannot exceed two persons per bedroom (plus two additional persons);

owners may not host events such as weddings, parties, reunions, or other large gatherings; and STR owners must provide 24-hour emergency contacts for the property as part of their registration requirements. *Id.* at ¶¶ 38-40.

Plaintiffs in this case include property owners Edward and Tara Dowdell, who manage Starsail Adventures, LLC; property manager and broker AvantStay Southeast LLC; and property manager and broker Carolina Destinations, LLC. *Id.* at ¶¶ 9-10. They filed their case against Defendant Iredell County in the Superior Court for Iredell County on December 22, 2023, alleging that the Iredell County Board lacked the authority to enact the STR Ordinance, the STR Ordinance violates several provisions of the North Carolina Constitution and various state statutes, and that the Ordinance represented an unlawful "taking" in the form of inverse condemnation under both North Carolina and Federal law. *See generally*, Doc. No. 1-2. Plaintiffs seek declaratory, injunctive, and damages/monetary relief. *Id.* On December 22, 2023, the same day the Complaint was filed, the State Court set a date for a hearing on a preliminary injunction and effectively granted Plaintiffs' request for a temporary restraining order staying enforcement of the STR Ordinance. *See* Doc. No. 1-4 ("This matter shall come on for a preliminary injunction the term of January 2, 2024. The county shall not seek enforcement of the 10-17-2023 STR Ordinance pending that preliminary injunction."). Defendants timely filed a notice of removal with this Court on January 4, 2024, and Plaintiffs filed a motion for a temporary restraining order and preliminary injunction in this Court on January 5, 2024. *See* Doc. Nos. 1, 5.

In its Order setting a briefing schedule for the motion for a temporary restraining order and preliminary injunction, the Court directed Plaintiffs to address whether the allegations in the Complaint supported federal subject-matter jurisdiction, which the parties have addressed in Plaintiffs' Motion to Remand, now before this Court, and the associated briefing.

Significantly, this is not the only pending case challenging the STR Ordinance. The day before the Complaint in the instant action was filed *Lawrence v. Iredell County*, 23-CVS-3407, was filed in the Superior Court for Iredell County. Although this action was removed to federal court, *Lawrence* has remained in state court because the plaintiffs in that case only brought claims under state law. *See* Doc. No. 14-1. And, in *Lawrence*, the state court has recently enjoined enforcement of the STR Ordinance. Doc. No. 14-2 at 6-7. Thus, the STR Ordinance is currently enjoined and may not be enforced against the Plaintiffs in the instance case.

## III. DISCUSSION

In their Motion to Remand and associated Reply brief, Plaintiffs argue that the alleged federal claims in their case are not substantial enough to support jurisdiction in this Court and further urge the Court to decline jurisdiction under the *Colorado River* abstention doctrine. *See* Doc. Nos. 15-1, 17. Defendant contends in response that Plaintiffs alleged a cognizable federal claim in their fifth and sixth causes of action and that the *Colorado River* doctrine should not be applied in this matter. *See* Doc. No. 16.

### A. Subject-Matter Jurisdiction

#### 1. Federal Question Jurisdiction

The Court's subject matter jurisdiction over this action depends on the presence or absence of "federal question" jurisdiction. 28 U.S.C. § 1331.[1] Article III of the United States Constitution states that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under ... the Laws of the United States." U.S. Const. art. III, § 2, cl. 1. 28 U.S.C. § 1331 grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

---

[1] All parties are citizens of North Carolina so the Court's diversity jurisdiction is not at issue here. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

the United States." In cases removed from state court, a case may arise under federal law in two ways: (1) "when federal law creates the cause of action asserted" and (2) "the plaintiff's right to relief [in a state law claim] necessarily depends on resolution of a substantial question of federal law." *Gunn v. Minton*, 568 U.S. 251, 257 (2013); *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677 (2006). Only the first is implicated in this case.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First National Bank*, 299 U.S. 109, 112-13 (1936)). Here, only two claims plausibly support federal question jurisdiction.

Plaintiff's "Fifth Claim for Relief: Unconstitutionality of Contest Ordinance and Inverse Condemnation" includes claims plausibly arising under federal law. As stated by Plaintiffs:

> North Carolina Constitution, Article I § 19 states in relevant part that: "No person shall be ... in any manner deprived of his ... property, but by the law of the land .... " which section "imposes upon a governmental agency taking private property for public use a correlative duty to make just compensation to the owner of the property taken**.** This principle is considered in North Carolina as an integral part of the law of the land within the meaning of this section. **The requirement that just compensation be paid for land taken for a public use is likewise guaranteed by the United States Constitution, Amendment XIV applying Amendment V to the States which states that "nor shall private property be taken for public use, without just compensation."**

Doc. No. 1-2 at ⁋ 105 (emphasis added) Although Plaintiffs argue in their Motion to Remand that the federal questions raised in the Complaint were pled "in the event that the State Court did not find a claim for inverse condemnation under either North Carolina law or its Constitution," the Court must look at the "face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392; Doc. No. 15-1. There is no indication in the quoted text that the claim was pled as an

alternative claim. Thus, noting that Plaintiffs are "the master of the[ir] claim" and had the choice to "avoid federal jurisdiction by exclusive reliance on state law," the Court must read the Complaint as it currently stands and, doing so, readily finds it is at least plausible that the cited portion of this claim arises under federal law (as it directly alleges). *Id.*

A portion of Plaintiffs' "Sixth Claim for Relief: Inverse Condemnation" also supports federal question jurisdiction. In the Complaint, Plaintiff makes two references to Federal Constitutional rights:

> Pursuant to N.C. Gen, Stat.§40A-51, **the Fourth and Fifth Amendments to the United States Constitution (as made applicable to the States by the Fourteenth Amendment), the 14th Amendment due process clause**, and Article 1, §19 of the North Carolina Constitution, allege and say that NCDOT has partially taken their property without instituting a condemnation action for all the property partially taken in violation of their statutory and constitutional rights …. **The acts and omissions complained of Defendant also amount to a violation of the Fourth Amendment's protection against unreasonable seizures of Defendants' property**.

Doc. No. 1-2 at ¶¶ 115, 125 (emphasis added). Again, Plaintiffs clearly have alleged claims arising out of federal law, specifically the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

Plaintiffs' three remaining claims do not invoke federal question jurisdiction in any manner.[2] *Id.* at ¶¶ 42-98. So, the next question for the Court is whether to assume supplemental jurisdiction over Plaintiff's state statutory, common law and constitutional claims. For the reasons explained below, the Court will decline to exercise supplemental jurisdiction over those claims and will accordingly remand them to the state court.

[2] In their Complaint, Plaintiffs allege five claims, but number them as claims one, three, four, five, and six. *See* Doc. No. 1-2.

**2. Supplemental Jurisdiction**

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Whether federal and state law claims are part of the same case or controversy is determined by examining whether they "derive from a common nucleus of operative fact … such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611, 615 (4th Cir. 2001) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)) (alternation adopted). However, district courts may decline to exercise jurisdiction under the exceptions enumerated in Section 1367(c), including when a claim "substantially predominates over the claim or claims over which the district court has original jurisdiction" or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction. §§ 1367(c)(2),(4). The Supreme Court has held that these statutory exceptions reflect "the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon*, 484 U.S. at 350).

Here, each of Plaintiffs' claims arise out of the STR Ordinance because each claim seeks relief from the STR Ordinance's restrictions on homeowners who lease their homes to others for short term rentals. Thus, the common nucleus of operative fact test is satisfied and absent any exception the Court could exercise supplemental jurisdiction over Plaintiffs' state law claims. However, the Court finds it should not exercise supplemental jurisdiction over those claims

because the "values of judicial economy, convenience, fairness and comity" weigh in favor of remand. *City of Chicago*, 522 U.S. at 173.

First, this case involves a local zoning ordinance and its effect on local homeowners' use of their property. District courts may abstain from adjudicating local zoning disputes when "state courts should hear the case initially due to their 'familiarity and experience with such matters.'" *Reynolds v. City of Roanoke*, 7:10-cv-00260, 2011 WL 2787269, at *2 (W.D. Va. July 13, 2011) (quoting *Fralin & Waldron, Inc. v. City of Martinsville*, 493 F.2d 481, 82-83 (4th Cir. 1974)). This is especially persuasive when, as here, "the interpretation and application of these ordinances can involve complex relationships between local government bodies and the state courts." *Reynolds*, 2011 WL 2787269, at *3. In this case, each of the claims in some way requires determinations of North Carolina state law, including complex issues such as preemption, and the application of state law, including the North Carolina Constitution, to local land ordinances. Moreover, given that the state court judge in *Lawrence* already granted a preliminary injunction enjoining the STR Ordinance, the "state court[] [is] in a better position than this Court to interpret and apply the challenged [] law" because the state court is already well versed in the issues that are presented in the instant case. *Id.* The Court also recognizes that North Carolina "likely has an interest in maintaining a coherent policy regarding local issues such as zoning." *Id.*

Second, a decision from this Court regarding the state law issues may in effect be nothing more than an advisory opinion. Were the Court to grant the motion for a preliminary injunction, it would have no substantive effect because the statute is already enjoined. Similarly, if it declined to do so, the state court injunction would still be in effect. Moreover, the relief sought in this case and in *Lawrence* could be redundant. If the state court finds that the Ordinance is unconstitutional under North Carolina law, then a claim that it violated federal law is moot. Thus, the Court would

not have to address the constitutional questions raised by the Plaintiffs if the state court vacates the STR Ordinance.

Accordingly, the Court finds that exercising supplemental jurisdiction over Plaintiff's state law claims would be inappropriate at this time because the state courts have an interest in these claims and are arguably better positioned to resolve them; state law questions predominate because they likely lead to the same relief Plaintiffs' request in this case; and because some of the relief Plaintiffs request has already been granted in the state court, rendering similar action from this Court moot.

Thus, the Court will exercise jurisdiction over Plaintiff's claims that raise federal question jurisdiction (in the Fifth and Sixth claims) but will decline to exercise supplemental jurisdiction over the remaining state law claims. Therefore, Plaintiffs' Motion to Remand will be granted as to Plaintiff's claims arising under North Carolina law.

### B. *Colorado River* Doctrine

Having found that the Court has jurisdiction over the federal claims asserted in Plaintiff's Fifth and Sixth claims, the Court must now address whether it should abstain from exercising that jurisdiction. Generally, the "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). However, the *Colorado River* doctrine permits a district court to "abstain from exercising jurisdiction over a duplicative federal action for purposes of 'wise judicial administration.'" *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)). Courts are "mindful" that this is an "extraordinary and narrow exception to the duty of a District

Court to adjudicate a controversy properly before it." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (quoting *Colorado River*, 424 U.S. at 813).

"The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits." *Id.* If the Court finds the suits are parallel, it proceeds to a balancing test "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).[3] However, the Court need not reach this balancing test in this action because it finds that the suits are not parallel.

Suits are sufficiently parallel "if substantially the same parties litigate substantially the same issues in different forums." *Id.* (citing *New Beckley*, 946 F.2d at 1073). In short, they must be "almost identical." *vonRosenberg*, 849 F.3d at 168 (citing *Chase Brexton*, 411 F.3d at 464). "It is not enough for parties in the state and federal actions to be merely aligned in interest." *Id.* Cases "arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies." *Id.* "If there is any serious doubt that the state action would resolve *all* of the claims, 'it would be a serious abuse of discretion' to abstain." *Id.* (citing *Moses H. Cone Mem'l Hospital*, 460 U.S. at 28).

There are multiple differences between *Lawrence* and the instant case that make *Colorado River* abstention inappropriate. First, the parties between the two cases are not substantially similar. In *Lawrence*, the Plaintiffs are two homeowners who manage their properties through a

[3] Should the Court have reached this step of the inquiry, it would have analyzed six factors: (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Id.* (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 15-16).

registered LLC. In this case, Plaintiffs include homeowners who manage their rental properties through LLCs, but also include two companies whose business is to manage short term rentals rather than own them. *See McLaughlin v. Untied Virginia Bank*, 955 F.2d 930, 934-35 (4th Cir. 1992) (finding actions were not parallel where the state suit involved claims by corporations and the federal suit involved personal claims by the president of those corporations). Thus the parties are not substantially similar. Second, Plaintiffs here bring both federal and state law claims, whereas the plaintiffs in *Lawrence* bring only state law claims. Thus, although the ultimate relief sought may be similar, the scope of the claims is not. Third and finally, the plaintiffs in *Lawrence* did not bring a claim for inverse condemnation under either state or federal law, further distinguishing the scope of the two cases.

Therefore, the cases are not parallel and so the Court declines to abstain from exercising its federal question jurisdiction under the *Colorado River* doctrine.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion to Remand (Doc. No. 15) is **GRANTED in part** and **DENIED in part;**
2. Plaintiff's state law claims are to be remanded to the Superior Court for Iredell County**;** and
3. This case shall **proceed toward a trial on the merits on the remaining federal law claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 26, 2024

Kenneth D. Bell
United States District Judge